**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASSIUS JACKSON,
*Plaintiff*,

v.

CBAC BORROWER, LLC,
*Defendant*.

Civil Action No.
25-2994-ABA

## MEMORANDUM OPINION

Plaintiff Cassius Jackson, who is representing himself, contends that security officers employed by Defendant CBAC Borrower, LLC, which operates the Horseshoe Casino in Baltimore, Maryland, were negligent, and, among other things, assaulted and falsely imprisoned him. Defendant has moved for summary judgment on all claims. For the reasons that follow, the Court will grant the motion and enter summary judgment in favor of Defendant.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Around 3:30 a.m. on September 25, 2024, Plaintiff entered the Horseshoe Casino allegedly "seeking refuge, fearing for his life due to being followed by unknown individuals." ECF No. 6 at 2 ¶ 2; ECF No. 19-2, ECF No. 19-3 at 22:13–20.[2] Plaintiff had no money, identification, phone, or shoes. ECF No. 6 at 2 ¶ 8, ECF No. 19-3 at 44:10–19; ECF No. 19-4 at 3. Defendant produced security footage of the entire interaction with

[1] The facts are presented in the light most favorable to Plaintiff. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

[2] All page citations, except for deposition page numbers, are to the ECF pagination which may differ from the parties' page numbers.

Plaintiff. ECF No. 19-2. The footage does not contain audio. Plaintiff agrees that "[t]he surveillance video provides direct, objective evidence." ECF No. 27 at 10.

The video footage shows Plaintiff outside of a gas station across the street from the casino standing near other people for about twelve minutes, walking across the parking lot of the gas station alone, crossing seven lanes of traffic, and then running along a side road before entering the casino; it does not show anyone chasing or following Plaintiff. ECF No. 19-2. Plaintiff testified at his deposition that there was a person in his car at the gas station who was threatening him. ECF No. 19-3 at 35:9–16.

Plaintiff alleges that after entering the front lobby of the casino, he asked the three security officers stationed there for help. ECF No. 6 at 2 ¶¶ 5–7; ECF No. 19-2. From approximately 3:40 a.m. to 3:57 a.m., the security officers spoke with Plaintiff, advised him that he was trespassing, and requested that he leave the property. ECF No. 19-2; ECF No. 19-4 at 3–5. Plaintiff left the lobby and entered the vestibule momentarily but then returned and refused to leave. ECF No. 19-2. Between 3:58 and 4:02 a.m., two of the security officers attempted to guide Plaintiff out of the casino by opening the doors from the lobby to the vestibule and from the vestibule to the outside and gesturing for Plaintiff to leave. *Id.* Plaintiff did not comply and stood in the lobby doorway. *Id.* Plaintiff testified at his deposition that he was not asked to leave and that he did not refuse to leave, ECF No. 19-3 at 44:22–45:6, but that testimony is clearly contradicted by the video footage showing the officers opening the doors and gesturing for him to leave, ECF No. 19-2; *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that when there is undisputed video evidence and the "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts" and instead should "view[ ] the facts in the light depicted by the videotape").

At about 4:02 a.m., another security officer joined the others from outside and put his hand on Plaintiff's back to guide him out. *Id.* Plaintiff grabbed the doorframe and refused to move. Another guard took Plaintiff's arm and the two officers pushed Plaintiff out while he kicked and struggled. *Id.* The officers' physical contact with Plaintiff lasted less than a minute. *Id.* After being escorted outside, Plaintiff turned around and attempted to walk back into the casino, but the security officers prevented him from doing so. *Id.* The security officers then escorted Plaintiff to the taxi stand where Plaintiff entered a taxi and left the property. *Id.*

Plaintiff alleges in his complaint that while being escorted outside of the casino, "an unidentified man dressed in all black rushed in from outside and began violently choking him" and that "[i]mmediately following this, the original female guard, the male guard, and the front desk employee all physically joined the assault, striking Plaintiff before forcibly ejecting him." ECF No. 6 at 2 ¶¶ 9–10. Plaintiff also claims that "[o]utside the casino, Plaintiff was left alone, injured, and terrified, without resources or support." *Id.* ¶ 12. These allegations are contradicted by the video evidence. ECF No. 19-2.

Plaintiff testified at his deposition that after leaving the casino, the taxi dropped him off at another gas station where he was able to have the police called for him. ECF No. 19-3 at 46:9–47:6, 48:17–49:9. The police allegedly returned Plaintiff to his car at the first gas station and removed the threatening individual from his car, allowing Plaintiff to drive away. *Id.* at 50:15–52:1.

Plaintiff alleges that before filing his complaint, Defendant's counsel offered first $350, then $750, and then $1,500 to settle the case, which Plaintiff refused. ECF No. 6

at 3. Plaintiff alleges that along with the last settlement offer, counsel also "discouraged [him] from pursuing the case" and "threatened that the casino might *sue Plaintiff*." *Id.*

Plaintiff filed his complaint in state court on July 21, 2025. ECF No. 6. His complaint contains eight counts: (1) Negligence; (2) Premises Liability/Negligent Security; (3) Assault and Battery; (4) Intentional Infliction of Emotional Distress; (5) False Imprisonment; (6) Breach of Duty to Protect Guests, (7) Negligent Hiring, Training, and Supervision; and (8) Retaliation and Legal Intimidation. *Id.* at 3. Defendant removed the case to this Court and, after discovery, filed the pending motion for summary judgment. ECF No. 19. Plaintiff responded to the motion, and Defendant filed a reply. ECF Nos. 27 & 28.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As stated, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar*, 988 F.3d at 761 (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the Court will award summary judgment unless

the non-moving party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

As will be discussed below, Plaintiff's claims are largely based on allegations that are not supported by the evidence presented in the case, even when viewed in the light most favorable to him and taking into account that, as a pro se litigant, he "is entitled to a liberal construction of his pleadings." *Graham v. Geneva Enters.*, Inc., 55 F. App'x 135, 136 (4th Cir. 2003) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

### A. Plaintiffs' Negligence Claims

Plaintiff asserts negligence claims in Counts 1, 2, 6 and 7 of the complaint. For these claims, Plaintiff must "prove the following elements: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Brown v. Dermer*, 357 Md. 344, 356 (2000). Plaintiff's negligence claims fail because Defendant did not owe Plaintiff a duty to protect him from unknown individuals off the property and no duty could have been breached because the video evidence clearly shows that the officer's actions were reasonable under the circumstances.

"Absent statutes to the contrary, or the existence of a legally cognizable special relationship, the law is clear that a person has no legal duty to come to the aid of another in distress, even if the aid can be provided at no risk or cost to the other person." *Southland Corp. v. Griffith*, 332 Md. 704, 716 (1993) (citing Restatement (Second) of

Torts § 314 (1965)). But property possessors owe some duties to visitors based on their status. Maryland recognizes four classifications of visitors: invitee, licensee by invitation, bare licensee, and trespasser. *Funk v. Taubman Co., Ltd.*, 102 F. Supp. 2d 308, 312 (2000) (citing *Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 44 (1995)).

The undisputed evidence (particularly the surveillance footage), with all inferences drawn in Plaintiff's favor, establishes that Plaintiff entered the casino as a "bare licensee—one on the property with permission but for his or her own purposes"—which meant Defendant owed him at that time "a duty only to refrain from willfully or wantonly injuring the licensee and from creating 'new and undisclosed sources of danger without warning the licensee.'" *Lane*, 338 Md. at 44 (quoting *Wagner v. Doehring*, 315 Md. 97, 102 (1989)), *overruled on other grounds by Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680 (1998). But the video footage establishes that sometime at or before 3:55 a.m., security officers directed Plaintiff to leave the premises. At that point, Defendant revoked his "licensee" status and Plaintiff became a trespasser. *See Thaler v. Donald J. Trump for President, Inc.*, 304 F. Supp. 3d 473, 479 (D. Md.), *aff'd*, 730 F. App'x 177 (4th Cir. 2018) ("Under Maryland law, a person may not remain on the property of another after he is notified of his right not to do so, and his entry on the property is wanton."); Md. Code, Crim. Law § 6-403(b) ("A person may not remain on private property . . . of another, after having been notified by the owner or the owner's agent not to do so."); *Busada v. Ransom Motors, Inc.*, 31 Md. App. 704, 709 (1976) ("[I]t is a trespass to refuse to leave after a license to remain has been revoked."). Once Plaintiff's status was a trespasser, Defendant owed him "no duty 'except to refrain from willfully or wantonly injuring or entrapping [him].'" *Lane*, 338 Md. at 44 (quoting *Wagner*, 315 Md. at 102); (internal citation omitted). Thus, whether Plaintiff was a bare

licensee or a trespasser, Defendant had no duty to protect Plaintiff from alleged unknown individuals off the property.

Moreover, even if the officers had owed a legal duty to Plaintiff, the undisputed evidence (again, principally the surveillance video) establishes that their actions were reasonable; there is no evidence from which a reasonable factfinder could conclude that the officers breached any duty, or that Defendant breached any duty to train or otherwise. As a trespasser, the security officers were entitled to use reasonable force to remove Plaintiff from the premises. *Dasheill v. State*, 214 Md. App. 684, 701 (2013). Even viewing the video footage and other evidence in the light most favorable to Plaintiff, no reasonable fact finder could conclude that the amount of force used to remove him was unreasonable or excessive under the circumstances.

**B. Assault and Battery**

"[T]he elements of the tort of battery consist of the unpermitted application of trauma by one person upon any part of the body of another person." *Johnson v. Valu Food, Inc.*, 132 Md. App. 118, 123 (2000). As explained above, and as shown on the video footage, the force used by the security officers to remove Plaintiff was reasonable and permitted, and no reasonable fact finder could reach a different conclusion. Therefore, Plaintiff does not have a valid claim for assault or battery.

**C. False Imprisonment**

The security officers also did not falsely imprison Plaintiff. "In order to establish a claim for false imprisonment, 'the plaintiff must prove that the defendant deprived him or her of his or her liberty without consent and without legal justification.'" *Id.* (quoting *Green v. Brooks*, 125 Md. App. 349, 366 (1999)). As explained above, there was

legal justification for his removal as a trespasser. As a result, Plaintiff cannot maintain this claim.

### D. Intentional Infliction of Emotional Distress

The parties do not brief Plaintiff's intentional infliction of emotional distress ("IIED") claim in any detail, but it fails too. "A claim of IIED has four elements: '(1) The conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; (4) [t]he emotional distress must be severe.'" *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). At a minimum, there is no evidence of intentional or reckless extreme and outrageous conduct by the security officers. As discussed above, the evidence shows that the security officers' actions were reasonable in light of the circumstances and the amount of force used to evict Plaintiff was not excessive.

### E. Retaliation and Legal Intimidation

The parties also do not brief this claim. The only allegations that appear to relate to this claim are that Plaintiff was given settlement offers, was discouraged from continuing the lawsuit, and was told that Defendant might countersue him. Even if true these facts would not create a viable cause of action.

## IV. CONCLUSION

Defendants are entitled to summary judgment on all of Plaintiff's claims. Therefore, Defendant's motion will be granted and the case will be closed.

A separate order will issue.

Date: September 24, 2026

______*/s/*______________
Adam B. Abelson
United States District Judge